UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| YMCA OF MCHENRY COUNTY, | Case No.: 11-80295 |
| Debtor. | Honorable Manuel Barbosa |

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; (II) SCHEDULING AND APPROVING FORM AND METHOD OF NOTICE FOR A FINAL HEARING; AND (III) GRANTING RELATED RELIEF

Upon consideration of the Motion of Debtor for Interim and Final Orders Authorizing a Debtor in Possession Financing Agreement (the "*Motion*," capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion); it appearing that the relief requested in the Motion is in the best interests of the estate of YMCA of McHenry County (the "*Debtor*"), its creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157; and after due deliberation and sufficient cause therefore, it is hereby

**FOUND AND DETERMINED THAT** (Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.):

A.  An immediate and ongoing need exists for the Debtor to obtain financing of the type requested in the Motion to continue the operation of its business until such time as a final hearing on Motion (the "*Final Hearing*") may be conducted. Such financing is vital for the preservation of the Debtor's estate, business, and assets. The Debtor's estate will be immediately and irreparably harmed if this Order is not promptly entered. Therefore, good cause

DM3\1694176.3

has been shown for the interim relief sought in the Motion.

B.    The Debtor has requested that Clincher, LLC (the "*DIP Lender*") establish a lending facility in the Debtor's favor (the "*DIP Facility*") pursuant to which the Debtor may obtain revolving credit loans ("*DIP Loans*") to fund the Budget attached hereto as Exhibit 1 (the "*Budget*"). The proceeds of such DIP Facility shall be used by the Debtor in accordance with (i) the Budget and (ii) the terms of this Order and the final order on the Motion (the "*Final Order*," and collectively with this Order and the Budget, the "*DIP Financing Documents*"). The DIP Lender is willing to establish the DIP Facility upon the terms and conditions set forth in the DIP Financing Documents.

C.    The Debtor is unable to obtain the DIP Facility on an administrative expense basis pursuant to section 364(b) of the Bankruptcy Code. The DIP Lender shall receive an allowed claim for the amounts that the DIP Lender advances to the Debtor (including the interest thereon) under the DIP Facility pursuant to the DIP Financing Documents that shall have priority over all other administrative expenses pursuant to sections 364(c) and 364(c)(1) of the Bankruptcy Code as further detailed below.

D.    The Debtor has provided adequate notice of the Motion and the interim hearing on the Motion (the "*Interim Hearing*"), and such notice of the Motion and the Interim Hearing is good and sufficient for all purposes under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001(c) in light of the nature of the relief requested in the Motion.

E.    Good cause has been shown for the entry of this Order and authorizing the Debtor to obtain extensions of credit pursuant to the DIP Financing Documents. The Debtor's need for the financing of the type provided by this Order has been demonstrated at the Interim Hearing.

DM3\1694176.3

Entry of this Order will minimize disruption of the Debtor's business and operations, will preserve the assets of Debtor's estate for the benefit of its creditors, and is in the best interests of the Debtor, its creditors, and its estate. The terms of the proposed financing are fair, reasonable, adequate, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

F. Based upon the record presented at the Interim Hearing, it appears that the DIP Facility has been negotiated in good faith and at arm's length between all signatories hereto.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

1. The Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein, with the foregoing findings incorporated herein by reference. The Debtor is authorized to borrow money pursuant to the terms of the DIP Financing Documents and to perform all obligations thereunder.

2. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled. This Order shall be valid and binding on all parties-in-interest, and fully effective immediately upon entry.

3. Upon entry of this Order, the Debtor and the DIP Lender are immediately authorized to enter in to the DIP Facility, and the Debtor is immediately authorized to obtain the DIP Loans pursuant to the DIP Financing Documents. Availability under the DIP Facility is as set forth in the availability row in the Budget. The DIP Lender shall make DIP Loans in the form of cash advances to the Debtor within forty-eight (48) hours of receiving a request for funding from the Debtor, which requests shall be made no more than one (1) time per week. Any unused availability under the DIP Facility shall carry over to the next period in the Budget.

In no event shall the Debtor be liable to pay interest in connection with amounts that are carried over, repaid, or otherwise not actually advanced to the Debtor. The Debtor shall use the proceeds of the DIP Loans to pay the expenses set forth in the Budget or, with the prior consent of the DIP Lender, for other purposes.

4. Interest on the unpaid principal balance of the DIP Facility shall accrue at the rate of 4% per annum. The DIP Facility shall terminate upon the closing of the sale of substantially all of the Debtor's assets (the "*Termination Date*"), and the Debtor shall repay all outstanding principal and interest under the DIP Facility as soon as practicable thereafter. The Debtor may repay, and is hereby authorized to repay, any amount outstanding under the DIP Facility, in whole or in part, at any time, including, without limitation, from the proceeds of the sale of substantially all of its assets, without further order of the Court.

5. Pursuant to sections 364(c) and 364(c)(1) of the Bankruptcy Code, the DIP Lender is granted an allowed claim for all amounts that the DIP Lender advances to the Debtor (including the interest thereon) under the DIP Facility pursuant to the DIP Financing Documents, which claim shall have priority over all administrative expenses including, but not limited to, the kinds specified in section 503(b) of the Bankruptcy Code and the kinds specified in sections 507(a) and (b) of the Bankruptcy Code (which shall include, without limitation, any administrative expense claim that may arise in this case after it is converted to a case under chapter 7 of Bankruptcy Code including, but not limited to, the claim of any chapter 7 trustee who may be appointed in this case). The claim described above shall remain in effect in the event that final relief on the Motion is denied.

6. The Debtor shall provide the DIP Lender with periodic reports concerning its expenditure of the proceeds of the DIP Loans at such times as may be reasonably requested by

4

DM3\1694176.3

the DIP Lender.

7.   The Final Hearing shall be held at 11:00 a.m. (Central Time) on March 2, 2011. Within three (3) business days after the entry of this Order, the Debtor shall provide notice, via First Class U.S. Mail, postage prepaid, of the Final Hearing to (a) the Office of the United States Trustee, (b) the Debtor's twenty (20) largest unsecured creditors, (c) counsel for Harris Bank, and (d) counsel for The Young Men's Christian Association of Chicago. Such service shall constitute good and sufficient notice of the Final Hearing. Any objection to the relief sought at the Final Hearing shall filed with the Court on or before 5:00 p.m. (Central Time) on February 25, 2011 and served upon counsel to the Debtor, Rosanne Ciambrone, Duane Morris LLP, 190 South LaSalle Street, Suite 3700, Chicago, Illinois 60603. Unless an objecting party or its counsel appears at the Final Hearing to assert the basis for such objection before the Court, such objection shall be deemed to have been waived and abandoned by such objecting party.

8.   This Order and all terms of the DIP Financing are binding on any chapter 7 or chapter 11 trustee who may be appointed in this case.

9.   This Order shall take effect immediately upon execution hereof, and there is no just reason to delay enforcement of this Order.

[Signature Page of Debtor and DIP Lender follows]

Agreed to by:

YMCA OF MCHENRY COUNTY

By: *[signature]*
Name: Rosanne Ciambrone
Title: attorney for debtor-in-possession

CLINCHER, LLC

By: *[signature]*
Name: John J. Jiganti
Title: Attorney for Clincher, LLC

FEB 11 2011  *[signature]*

*In re: YMCA of McHenry County* (Bankr. N.D. Ill. Case No. 11-80295)
Interim Order (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Scheduling and Approving Form and Method of Notice for a Final Hearing; and (III) Granting Related Relief

DM3\1694176.3

**YMCA OF MCHENRY COUNTY BUDGET**

| Income | 2011 | | FEB | MAR |
|---|---|---|---|---|
| **Branch 01 - Crystal Lake** | | | | |
| Membership | $66,000 | | $33,000 | $33,000 |
| Youth Programs | $2,700 | | $1,400 | $1,300 |
| Aquatic Programs | $21,720 | | $9,025 | $12,695 |
| Adult Programs | $2,700 | | $1,350 | $1,350 |
| Miscellaneous | $10,630 | | $5,315 | $5,315 |
| Sub Total | $103,750 | | $50,090 | $53,660 |
| **Branch 02 - Child Care Services** | | | | |
| Youth/Preschool Programs | $13,430 | | $7,615 | $5,815 |
| Day Camp | $27,500 | | $1,750 | $25,750 |
| School Age Child Care | $30,000 | | $15,000 | $15,000 |
| Sub Total | $70,930 | | $24,365 | $46,565 |
| **Branch 03 - Camp Algonquin** | | | | |
| Retreat Contracts | $7,000 | | $7,000 | $0 |
| Education | $0 | | $0 | $0 |
| Foundations/Fundraising | $0 | | $0 | $0 |
| Sub Total | $7,000 | | $7,000 | $0 |
| **Income Total** | **$181,680** | | **$81,455** | **$100,225** |

| Expense | 2011 | Admin Cost | FEB | MAR |
|---|---|---|---|---|
| **Branch 01 - Crystal Lake** | | | | |
| Administration | $96,039 | | $44,714 | $51,325 |
| Maintenance | $12,648 | | $6,226 | $6,421 |
| Youth Programs | $3,119 | | $1,631 | $1,489 |
| Aquatic Programs | $35,477 | | $17,713 | $17,763 |
| Adult Programs | $9,139 | | $4,420 | $4,720 |
| Sub Total | $156,422 | | $74,704 | $81,718 |
| **Branch 02 - Child Care Services** | | | | |
| Youth/Preschool Programs | $15,985 | | $8,242 | $7,742 |
| Day Camp | $13,054 | | $8,027 | $5,027 |
| School Age Child Care | $24,343 | | $12,144 | $12,199 |
| Sub Total | $53,381 | | $28,413 | $24,968 |
| **Branch 03 - Camp Algonquin** | | | | |
| Administration | $77,226 | | $36,336 | $40,891 |
| Retreat Contracts | $7,020 | | $3,520 | $3,500 |
| Education | $0 | | $0 | $0 |
| Misc/Rent | $1,045 | | $486 | $559 |
| Sub Total | $85,291 | | $40,342 | $44,949 |
| **Admin Costs** | | | | |
| YMCA Employee Benefit | $17,069 | $17,069 | | |
| YMCA Retirement | $4,123 | $4,123 | | |
| Payroll Taxes | $7,072 | $7,072 | | |
| Bankruptcy Costs | $5,276 | $5,276 | | |
| US Trustee Fee | $4,875 | $4,875 | | |
| Sub Total | $38,415 | $38,415 | | |
| **Expense Total** | **$333,509** | **$38,415** | **$143,459** | **$151,635** |

| Summary of Budget | | | | |
|---|---|---|---|---|
| Total Income | $181,680 | $0 | $81,455 | $100,225 |
| Total Expense | $333,509 | $38,415 | $143,459 | $151,635 |
| Surplus/Deficit | -$151,829 | -$38,415 | -$62,004 | -$51,410 |
| | | | | |
| Dip Availability | $151,829 | $38,415 | $62,004 | $51,410 |
| | On and after | 2/11/2011 | 2/11/2011 | 3/1/2011 |