# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| YMCA OF MCHENRY COUNTY, | Case No.: 11-80295 |
| Debtor. | Honorable Manuel Barbosa |

## FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN
## POST-PETITION FINANCING AND GRANTING RELATED RELIEF

Upon consideration of the Motion of Debtor for Interim and Final Orders Authorizing a Debtor in Possession Financing Agreement (the *"Motion,"* capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion); it appearing that the relief requested in the Motion is in the best interests of the estate of YMCA of McHenry County (the *"Debtor"*), its creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157; and after due deliberation and sufficient cause therefore, it is hereby

**FOUND AND DETERMINED THAT** (Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* FED. R. BANKR. P. 7052.):

A.    On February 11, 2011, this Court held an interim hearing on the Motion (the *"Interim Hearing"*) and entered the Interim Order (I) Authorizing Debtor to Obtain Post-Petition Financing; (II) Scheduling and Approving Form and Method of Notice for a Final Hearing; and (III) Granting Related Relief [Docket No. 31] (the *"Interim DIP Order"*), pursuant to which this Court granted the Motion on an interim basis and, among other things, set a final hearing on the Motion (the *"Final Hearing"*) and established notice and objection procedures.

B.    The Debtor has complied with all of the notice procedures set forth in the Interim

DIP Order, and has provided good and sufficient notice of the Final Hearing, the Motion, and the

objection deadline with respect thereto for all purposes including, without limitation, under all

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this

Court, and any other applicable law.

C.    No objection to the Motion has been made.

D.    An immediate and ongoing need exists for the Debtor to obtain financing of the

type requested in the Motion on a final basis to continue the operation of its business.  Such

financing is vital for the preservation of the Debtor's estate, business, and assets.

E.    The Debtor has requested that Clincher, LLC (the *"DIP Lender"*) establish a

lending facility, on a final basis, in the Debtor's favor (the *"DIP Facility"*) pursuant to which the

Debtor may obtain revolving credit loans (*"DIP Loans"*) to fund the Budget attached hereto as

Exhibit 1 (the *"Budget"*).  The proceeds of such DIP Facility shall be used by the Debtor in

accordance with (i) the Budget and (ii) the terms of this Order (this Order, the Interim Order, and

the Budget shall be collectively referred to herein as the *"DIP Financing Documents"*).  The DIP

Lender is willing to establish the DIP Facility, on a final basis, upon the terms and conditions set

forth in the DIP Financing Documents.

F.    The Debtor is unable to obtain the DIP Facility on an administrative expense basis

pursuant to section 364(b) of the Bankruptcy Code.  The DIP Lender shall receive an allowed

claim for the amounts that the DIP Lender advances to the Debtor (including the interest thereon)

under the DIP Facility pursuant to the DIP Financing Documents that shall have priority over all

other administrative expenses pursuant to sections 364(c) and 364(c)(1) of the Bankruptcy Code

as further detailed below.

2

G.   Good cause has been shown for the entry of this Order on a final basis and authorizing the Debtor to obtain extensions of credit pursuant to the DIP Financing Documents. The Debtor's need for the financing of the type provided by this Order has been demonstrated at the Final Hearing.  Entry of this Order will minimize disruption of the Debtor's business and operations, will preserve the assets of Debtor's estate for the benefit of its creditors, and is in the best interests of the Debtor, its creditors, and its estate.  The terms of the proposed financing are fair, reasonable, adequate, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

H.   Based upon the record presented at the Interim Hearing and the Final Hearing, it appears that the DIP Facility has been negotiated in good faith and at arm's length between all signatories hereto.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

1.   The Motion is hereby granted on an final basis, with the foregoing findings incorporated herein by reference.  The Debtor is authorized to borrow money pursuant to the terms of the DIP Financing Documents and to perform all obligations thereunder.

2.   Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled.  This Order shall be valid and binding on all parties-in-interest, and fully effective immediately upon entry.

3.   Upon entry of this Order, the DIP Facility is authorized on a final basis, and the Debtor is authorized to obtain the DIP Loans pursuant to the DIP Financing Documents on a final basis.  Availability under the DIP Facility is as set forth in the availability row in the Budget.  The DIP Lender shall make DIP Loans in the form of cash advances to the Debtor

3

within forty-eight (48) hours of receiving a request for funding from the Debtor, which requests shall be made no more than one (1) time per week. Any unused availability under the DIP Facility shall carry over to the next period in the Budget. In no event shall the Debtor be liable to pay interest in connection with amounts that are carried over, repaid, or otherwise not actually advanced to the Debtor. The Debtor shall use the proceeds of the DIP Loans to pay the expenses set forth in the Budget or, with the prior consent of the DIP Lender, for other purposes.

4.     Interest on the unpaid principal balance of the DIP Facility shall accrue at the rate of 4% per annum. The DIP Facility shall terminate upon the closing of the sale of substantially all of the Debtor's assets (the "*Termination Date*"), and the Debtor shall repay all outstanding principal and interest under the DIP Facility as soon as practicable thereafter. The Debtor may repay, and is hereby authorized to repay, any amount outstanding under the DIP Facility, in whole or in part, at any time without further order of the Court. The Debtor is authorized to make any such repayment from the proceeds of the sale of substantially all of its assets without further order of the Court for all draws that have been funded through and including March 4, 2011, which are estimated to be roughly $96,000. For all further draws under this Order, the Debtor and the DIP Lender will provide counsel for Harris Bank with five business days' notice of any proposed repayment, including the amount to be repaid. If Harris Bank does not object in writing, with such objection directed to counsel for the Debtor and the DIP Lender so that such objection is received within five business days, the Debtor is authorized to repay any such amount drawn from the proceeds of the sale of substantially all of its assets without further order of the Court. If Harris makes a timely objection to the repayment of the draw, the Debtor and/or the DIP Lender shall apply to the Court for repayment of the draw.

5.     Pursuant to sections 364(c) and 364(c)(1) of the Bankruptcy Code, the DIP

4

Lender is granted an allowed claim for all amounts that the DIP Lender advances (and, for the avoidance of doubt, has advanced) to the Debtor (including the interest thereon) under the DIP Facility pursuant to the DIP Financing Documents, which claim shall have priority over all administrative expenses including, but not limited to, the kinds specified in section 503(b) of the Bankruptcy Code and the kinds specified in sections 507(a) and (b) of the Bankruptcy Code (which shall include, without limitation, any administrative expense claim that may arise in this case after it is converted to a case under chapter 7 of Bankruptcy Code including, but not limited to, the claim of any chapter 7 trustee who may be appointed in this case).

6.    The Debtor shall provide the DIP Lender with periodic reports concerning its expenditure of the proceeds of the DIP Loans at such times as may be reasonably requested by the DIP Lender.

7.    This Order and all terms of the DIP Financing are binding on any chapter 7 or chapter 11 trustee who may be appointed in this case.

8.    This Order shall take effect immediately upon execution hereof, and there is no just reason to delay enforcement of this Order.

*[Signature Page Follows]*

Agreed to by:

**YMCA OF MCHENRY COUNTY**

By: _Rosanne Ciambrone_

Name: _Rosanne Ciambrone_

Title: _attorney_

**CLINCHER, LLC**

By: _[signature]_

Name: _Douk. Sheridan_

Title: _One of its Attorneys_

MAR 3 2011

Dated: March __, 2011

ENTERED: _[signature]_

United States Bankruptcy Judge

*In re: YMCA of McHenry County* (Bankr. N.D. Ill. Case No. 11-80295)
Final Order Authorizing Debtor to Obtain Post-Petition Financing and Granting Related Relief

DM3\1709447.1

## EXHIBIT 1

*YMCA OF MCHENRY COUNTY BUDGET*

| Income | 2011 | | FEB | MAR |
|---|---|---|---|---|
| **Branch 01 - Crystal Lake** | | | | |
| Membership | $66,000 | | $33,000 | $33,000 |
| Youth Programs | $2,700 | | $1,400 | $1,300 |
| Aquatic Programs | $21,720 | | $9,025 | $12,695 |
| Adult Programs | $2,700 | | $1,350 | $1,350 |
| Miscellaneous | $10,630 | | $5,315 | $5,315 |
| **Sub Total** | **$103,750** | | **$50,090** | **$53,660** |
| | | | | |
| **Branch 02 - Child Care Services** | | | | |
| Youth/Preschool Programs | $13,430 | | $7,615 | $5,815 |
| Day Camp | $27,500 | | $1,750 | $25,750 |
| School Age Child Care | $30,000 | | $15,000 | $15,000 |
| **Sub Total** | **$70,930** | | **$24,365** | **$46,565** |
| | | | | |
| **Branch 03 - Camp Algonquin** | | | | |
| Retreat Contracts | $7,000 | | $7,000 | $0 |
| Education | $0 | | $0 | $0 |
| Foundations/Fundraising | $0 | | $0 | $0 |
| **Sub Total** | **$7,000** | | **$7,000** | **$0** |
| | | | | |
| **Income Total** | **$181,680** | | **$81,455** | **$100,225** |

| Expense | 2011 | Admin Cost | FEB | MAR |
|---|---|---|---|---|
| **Branch 01 - Crystal Lake** | | | | |
| Administration | $96,039 | | $44,714 | $51,325 |
| Maintenance | $12,648 | | $6,226 | $6,421 |
| Youth Programs | $3,119 | | $1,631 | $1,489 |
| Aquatic Programs | $35,477 | | $17,713 | $17,763 |
| Adult Programs | $9,139 | | $4,420 | $4,720 |
| **Sub Total** | **$156,422** | | **$74,704** | **$81,718** |
| | | | | |
| **Branch 02 - Child Care Services** | | | | |
| Youth/Preschool Programs | $15,985 | | $8,242 | $7,742 |
| Day Camp | $13,054 | | $8,027 | $5,027 |
| School Age Child Care | $24,343 | | $12,144 | $12,199 |
| **Sub Total** | **$53,381** | | **$28,413** | **$24,968** |
| | | | | |
| **Branch 03 - Camp Algonquin** | | | | |
| Administration | $77,226 | | $36,336 | $40,891 |
| Retreat Contracts | $7,020 | | $3,520 | $3,500 |
| Education | $0 | | $0 | $0 |
| Misc/Rent | $1,045 | | $486 | $559 |
| **Sub Total** | **$85,291** | | **$40,342** | **$44,949** |
| | | | | |
| **Admin Costs** | | | | |
| YMCA Employee Benefit | $17,069 | $17,069 | | |
| YMCA Retirement | $4,123 | $4,123 | | |
| Payroll Taxes | $7,072 | $7,072 | | |
| Bankruptcy Costs | $5,276 | $5,276 | | |
| US Trustee Fee | $4,875 | $4,875 | | |
| **Sub Total** | **$38,415** | **$38,415** | | |
| | | | | |
| **Expense Total** | **$333,509** | **$38,415** | **$143,459** | **$151,635** |

| Summary of Budget | | | | |
|---|---|---|---|---|
| Total Income | **$181,680** | $0 | $81,455 | $100,225 |
| Total Expense | $333,509 | $38,415 | $143,459 | $151,635 |
| Surplus/Deficit | **-$151,829** | **-$38,415** | **-$62,004** | **-$51,410** |
| | | | | |
| Dip Availability | **$151,829** | **$38,415** | **$62,004** | **$51,410** |
| On and after: | | 2/11/2011 | 2/11/2011 | 3/1/2011 |